UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20674-CR-GAYLES

UNITED STATES OF AMERICA

vs.

LEAH SOLOMON,

     Defendant.

_____/

**REPLY BRIEF IN SUPPORT OF MOTION FOR EARLY TERMINATION OF
<u>SUPERVISED RELEASE</u>**

COMES NOW Defendant LEAH SOLOMON, by and through the undersigned counsel, and hereby files this Reply Brief in Support of Motion for Early Termination of Supervised Release and in support whereof does state:

<u>FACTUAL ISSUES WITH GOVERNMENT'S POSITION</u>

Ms. Solomon raised the issue of her cooperation with the Government because it demonstrated her efforts to rehabilitate and remedy her past errors. The Government, in its Response in Opposition of the Motion, claimed that Ms. Solomon's cooperation was "of extremely limited, if any value," and that "no information she provided was of sufficient value for the United States to have considered using her as a trial witness."  Response (DE 1186) at 1.  However, on May 3, 2022, the same prosecutor who responded to the instant motion filed a Joint Motion to Extend Voluntary Surrender Date for Ms. Solomon and six co-defendants on the premise that "[a]ll of these defendants **are expected to be trial witnesses** against Stephen Costa, who is set for trial beginning September 6, 2021." Joint Mot. (DE 532) (emphasis added). The same prosecutor held a similar position about Ms. Solomon as a trial witness five months later when he filed a Motion to Extend Surrender Date on October 3, 2022, asserting that Ms. Solomon and the other six co-

defendants "**are likely witnesses** in the trial of the defendants who are set for trial in January, 2023." Mot. (DE 617) (emphasis added).  By April 2023, the same prosecutor moved to extend Ms. Solomon and other six co-defendants' surrender date further, noting "the United States expects to file Rule 35 motions for sentence reductions for the above defendants [including Leah Solomon.]" Agreed Mot. (DE 720).

The Government, in its response, claims that "while on pre-trial release, she lied, cheated, and stole," and incorporates by reference a previous Government pleading, DE 1142. That pleading itemizes conduct including obtaining a passport in a false name, and not abiding by a pre-charging agreement with the Government to transfer assets from the sale of her residence to the Government as part of her forfeiture and spending tens of thousands of dollars on luxury goods and services for herself, and also lying about her whereabouts, claiming she was ill when she was getting her nails done. *Id.*

Save the first conduct listed above, the rest of this conduct occurred *before* she was on pre-trial release not while she was on pre-trial release. The Government filed a Motion for Preliminary Order of Forfeiture outlining the diversion of the proceeds of the sale of Ms. Solomon's residence, but the Government's filings show that the diversion of the proceeds occurred in September 2020 and February 2021, Mot. for Forfeiture (DE 474) at 2, Aff. In Support (DE 474-1) at 4, months before Ms. Solomon was released on bond in June 2021, Bond (DE 332).  And in its Response to Defendant Solomon's Sentencing Memorandum, the Government confirmed that the purchases with the diverted proceeds and the incident involved the alleged COVID sickness also took place between May 2020 and May 2021, Resp to Sent. Memo (DE 509) at 3-4, again not while she was on pre-trial release. Indeed, as the Government conceded in May 2022, Ms. Solomon had been on bond for a very substantial period of time and had not "violated any conditions of supervised

release [sic] and had "been in full compliance." Joint Mot. to Extend Voluntary Surrender Date (DE 532) at 1.

As for the passport, the Government was incorrect when it claimed in DE 1142 that the Ms. Solomon "attempted to surreptitiously obtain a passport in a false name." DE 1142.  Indeed, as the September 14, 2023 violation memorandum filed by Ms. Solomon's then-Probation Officer sets forth, two days before Ms. Solomon applied for a passport in her married name, she left a voicemail message for the probation officer stating that she wanted to update her passport in her married name.  Violation Memorandum (DE 779) (sealed document). While the Probation Officer did not respond to the voicemail, and Ms. Solomon did apply for the passport in her married name the next day, Ms. Solomon's prior notice to her Probation Officer through voicemail is hardly "surreptitious" conduct and Ms. Solomon was attempting to obtain a passport in her married name, not a false name.

Next, the Government claims that Ms. Solomon has an outstanding money forfeiture judgment for approximately $1.5 million and doesn't aver that she has "paid a nickel of it."  Resp. (DE 1186) at 2. Yet another Government filing, made on March 4, 2026, acknowledges that while Ms. Solomon's forfeiture money judgment amount was $1,530,837, with the agreed-upon forfeiture of three bank accounts, it now stands at $1,241,587.94. Notice of Partial Satisfaction (DE 1183) at 2, 4, 5.

Finally, the Government claims that "there is no reason why the Defendant should receive early termination of supervised release, other than that she would rather not be supervised." Resp. (DE 1186) at 2. Yet a co-defendant who sought the same prosecutor's position on termination of two – not just one – years remaining on supervised release proffered no reason or justification or special circumstance to support his motion for early termination. C. Gonzalez' Unopposed Mot.

3

for Early Term. (DE 1158) at 1. The Government, however, did not object, as it does here, that that defendant provided no reason for early termination.

LEGAL ISSUES WITH GOVERNMENT'S POSITION

The Government, in its Response, repeatedly invokes the Ms. Solomon's "bad acts" in opposing the reduction of the Defendant's term of supervised release. For example, the Government states that Ms. Solomon engaged in "egregious misconduct" while on bond, and "lied, cheated, and stole," and that her "misconduct while on pre-trial release, which was a [sic] significant enough that this court revoked her bond and remanded her." Resp. (DE 1186) at 2. Unquestionably, the Government leans heavily on the "retribution" aspect of sentencing in opposing her motion for early termination. The problem is that the recent Supreme Court case of *Esteras v. United States*, 606 U.S. 185 (20, interpreted 18 U.S.C. § 3583(c) as preventing a court from considering such "retributive factors" when determining the length and conditions of a term of supervised release.

As the *Esteras* Court found, 18 U.S.C. § 3583(c) allows a court to consider some, *but not all* the 18 U.S.C. § 3553(a) factors in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions. *Esteras,* 606 U.S. 185, 192, *citing* 18 U.S.C. § 3583(c). One of the § 3553 factors omitted, significantly in the Supreme Court's opinion, is § 3553(a)(2)(A) – the need for the sentence to "'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,' *i.e.* the retributive purposes of sentencing*." Esteras,* 606 U.S. at 192 (internal citations omitted). Because Congress excluded the § 3553(a) factor associated with the "retributive purposes of sentencing," the Supreme Court held that courts could not consider § 3553(a)(2)(A) as a factor in revoking the term of supervised release. *Id.* at 203. In so doing, the

4

Court made a critical distinction between the nature of fines, prohibition, and imprisonment versus supervised release:

> Congress's decision to exclude retribution from the calculus also comports with the role of supervised release in our current criminal justice scheme. Fines, probation, and imprisonment are a court's primary tools for ensuring that a criminal defendant receives just deserts for the original offense. Supervised release, by contrast, "is not a punishment in lieu of incarceration." *United States* v. *Granderson*, 511 U. S. 39, 50, 114 S. Ct. 1259, 127 L. Ed. 2d 611 (1994). Rather, it "fulfills rehabilitative ends" and "provides individuals with postconfinement assistance." *United States* v. *Johnson*, 529 U. S. 53, 59-60, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000).

*Id*. at 196 (emphasis added). Simply put, retribution is not a proper consideration in the supervised release realm.

Congress has similarly spoken to the factors a court may consider in *modifying* a term of supervised release. 18 U.S.C. § 3553(e), the statute that provides for early termination of supervision, like 18 U.S.C. § 3553(c), omits 18 U.S.C. § 3553(a)(2)(A) as a factor in determining whether to terminate a term of supervised release. 18 U.S.C. § 3553(e) ("The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release"). The reasoning of *Esteras* applies with equal force to modification as it does revocation. Just as Congress has prevented consideration of "the retribution factor" in setting the conditions of supervised release, it has also prevented consideration of 18 U.S.C. § 3553(a)(2)(A) in determining whether to reduce that term.

## CONCLUSION

The Government has amply discharged its duty to advocate for Ms. Solomon to receive her "just deserts" for her conduct. On November 14, 2023, the Government filed Rule 35 motions for

5

the individuals identified in its motions to extend surrender described above, Motion to Reduce Sentence (DE 791), everyone *except* Ms. Solomon.

The Government may have been able to unilaterally consider "the retribution factor" in choosing not to file a Rule 35 motion on Ms. Solomon's behalf.  It does not need to continue to advocate for Ms. Solomon's punishment, and this Court should reject the Government's efforts to oppose this modicum of relief Ms. Solomon has earned through her cooperation and her post-release rehabilitative efforts.

Respectfully submitted,

*/s Adam S. Fels*
Adam S. Fels
Florida Bar No. 0114917
afels@ffslawfirm.com
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, FL 33134
Tel: (305) 569-7701
Fax: (786) 627-4145

Counsel for LEAH SOLOMON